## PERSONIUS v. UNITED STATES.
### No. 6891.

Circuit Court of Appeals, Ninth Circuit.

June 5, 1933.

Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellant.

H. E. Ray, U. S. Atty., and Ralph R. Breshears, W. H. Langroise, and Sam S. Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

The sole point involved in this appeal is whether or not the lower court erred in sustaining a general and special demurrer to the complaint.

This, in turn, involves the single question as to whether or not a veteran can recover under war risk insurance certificates if his complaint alleges that "he was totally and permanently disabled from October 31, 1918, until January 1, 1929"; but fails to allege that he was totally and permanently disabled the time he brought suit, namely, on December 10, 1931.

The complaint sets forth that the appellant served in the United States Army from June 16, 1918, to February 27, 1920; that while in the service he applied for two policies of war risk insurance for $5,000 each; that a certificate of war risk insurance was issued under each application, by the terms whereof the appellee agreed to pay to the appellant $28.75 a month in the event that he suffered total and permanent disability; and that: " * * * While this plaintiff was in the military service of the United States as aforesaid and during the World War, and subsequent to the effective date of said insur-

ance, and while said policy [policies] was [were] in full force and effect, this plaintiff on October 31, 1918, while engaged in armed combat with the armed forces of the Central Powers, was wounded by being struck in the left leg by a fragment of high explosive shell, which caused a destruction of bone substance in the tibia and fibula, a contracture of the plantar tendon, a shortening of the left leg, an atrophy of the left leg, an infection of the left leg, and osteomyelitis of the bones of the left leg, and the plaintiff has continuously suffered from and been afflicted with said injuries and diseases from October 31, 1918, and this plaintiff is informed and believes, and upon information and belief alleges the fact to be that as a result of said injuries and diseases the said plaintiff became and was, on October 31, 1918, and during the time said insurance was in full force and effect, totally disabled, and that such disability was founded upon conditions which made it reasonably certain that it would continue throughout his life and that he was totally and permanently disabled from October 31, 1918, until January 1, 1929. That by reason thereof he became entitled to receive from the defendant the sum of $28.75 per month from October 31, 1918, to January 1, 1929."

The foregoing paragraph appears as part of the appellant's first cause of action, based upon the first insurance certificate, and, by reference, is made part of the second cause of action, based upon the second certificate.

The complaint also sets forth that, as to each application for insurance, there were "deducted from his monthly pay certain sums of money as premiums for said insurance to and including the month of February, 1920."

To the appellant's complaint and to each cause of action thereof, the appellee interposed a demurrer, as follows: "That the first [or second] cause of action of plaintiff's Complaint does not set forth facts sufficient to constitute a cause of action against this defendant, in this: That it appears on the face of the complaint as pleaded in said * * * cause of action, that the plaintiff is not now, and that he never has been, permanently and totally disabled, but that the diseases as set forth in Paragraph VI of said * * * cause of action were only temporarily disabling."

The lower court sustained the appellee's demurrer. The appellant declined to plead further, and the court entered a judgment of dismissal against the appellant. From that judgment the present appeal was taken.

In his brief the appellant indicates that he has recovered "from his total disability, but not from his permanent disability," and that he, "after a period of eleven years, did actually recover the ability to follow a substantial gainful occupation."

After quoting regulation No. 11, under Treasury Decision 20, W. R., which provides, among other things, that "any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantial gainful occupation shall be deemed, in Articles III and IV, to be total disability," and that " 'total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it," the appellant observes: "So that in any case of total and permanent disability, within this regulation, it may always be possible for the insured to recover the ability to follow continuously any substantially gainful occupation, and since this is true, if at any time while the insurance is in effect the insured becomes totally disabled and the conditions at that time make it reasonably certain that his disability will continue throughout his life, the insurance becomes payable, regardless of the fact that in the future he may recover," etc.

The appellant's reference to the possibility that the insured may "recover the ability to follow continuously any substantially gainful occupation," "in any case of total and permanent disability," is in connection with the provision in rule 11, supra, to the effect that: "Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in Article IV on the ground that the insured has become totally and permanently disabled, has recovered the ability to continuously follow any substantially gainful occupation, the payment of installments of insurance shall be discontinued forthwith, and no further installments thereof shall be paid so long as such recovered ability shall continue."

From the language of rule 11 the appellant seeks to draw the inference that "this regulation means that if the plaintiff in this action, while his insurance was in force and effect, became totally disabled and the conditions surrounding his disability were such that it was reasonably certain that it would continue throughout his life, the insurance became due him at that time and that he was entitled to such payments so long as that condition continued."

In view of the clear holdings of this and

other courts contrary to the appellant's position, however, we do not deem it necessary to attempt to reply to the extended arguments of the appellant as to the inferences to be drawn from the language either of the statutes or the regulations.

As we have already noticed, the clear implication to be drawn from the appellant's complaint is that he is at present able to follow continuously a substantially gainful occupation; and this implication is confirmed by the appellant's brief.

The preliminary proposition to be considered here is the effect of a veteran's ability to continue in gainful employment, upon the question of his total and permanent disability. That such employment may negative a claim of such disability is too well established to require much elaboration or citation of authority.

In United States v. Rice, 47 F.(2d) 749, the late Judge Rudkin, of this court, said: "But we feel constrained to hold that the manual labor performed by the appellee for the period of five years following his discharge from the army and the compensation received for his services are utterly inconsistent with his present claim that he was totally and permanently disabled before the policy lapsed."

The rule was recognized by the Circuit Court of Appeals for the Fourth Circuit in the case of United States v. Diehl, 62 F.(2d) 343, 344, 345, decided on December 2, 1932. In that case Judge Parker said: "It is clear that, in the face of this work record, plaintiff cannot be held to have been totally and permanently disabled between 1918 and 1928. * * * The insured's work record effectually negatives the contention that his disability was total; for it shows without contradiction that, shortly following the lapse of the policy, he worked with fair regularity over a long period of time at a substantially gainful occupation, and there is no evidence that his health was impaired as a result thereof. Likewise, there is no showing that he was suffering from a permanent disability. While it is shown that he had tuberculosis at the time of his discharge from the Army, it is not shown that his condition was such as to render it reasonably certain that the disease would permanently disable him. On the contrary, the evidence is that shortly after his discharge the disease was found to be in an arrested state."

See, also, United States v. Harrison (C. C. A. 4) 49 F.(2d) 227, 228; United States v. Wilson (C. C. A. 4) 50 F.(2d) 1063, 1064; United States v. Perry (C. C. A. 8) 55 F.(2d) 819, 824; United States v. Fly (C. C. A. 8) 58 F.(2d) 217, 219; Gregory v. United States (C. C. A. 4) 62 F.(2d) 345, 346; United States v. Cline (C. C. A. 4) 62 F.(2d) 346, 347; United States v. Jones (C. C. A. 4) 62 F.(2d) 347; United States v. Rosborough (C. C. A. 4) 62 F.(2d) 348; United States v. Ellis (C. C. A. 4) 62 F.(2d) 348, 349.

But, as we have seen, the appellant argues that, "in any case of total and permanent disability, within this regulation, it may always be possible for the insured to recover the ability to follow continuously any substantially gainful occupation," etc.

Stating his proposition in other language, the appellant asserts that "the word 'permanent' as construed by the courts does not mean unending, or absolute, or forever," or "always."

In support of this proposition, the appellant cites, among others, two decisions by the Supreme Court of the United States, namely, Mead v. Ballard, 7 Wall. (74 U. S.) 290, 294, 295, 19 L. Ed. 190, and Texas & Pacific Railway Company v. Marshall, 136 U. S. 393, 403, 10 S. Ct. 846, 848, 34 L. Ed. 385. An examination of those decisions, however, discloses that the former dealt with the location of an institution of learning and the latter with the establishment of a railroad's terminus, depot, car works, and machine shops.

Another case cited by the appellant dealt with the meaning of "permanent" in connection with alimony. Soule v. Soule, 4 Cal. App. 97, 105, 87 P. 205.

The other cases cited by the appellant on this proposition are not controlling upon this court.

None of the three cases mentioned above has any reference to the physical disability of a human being. Each, on the contrary, relates to conditions that may be controlled by an act of the human will, and are therefore necessarily changeful. The trustees of a school can change the location of the building. A railroad can change its terminus and remove its depot. A divorced woman may remarry, and therefore, in most jurisdictions, voluntarily forfeit her "permanent" alimony.

Indeed, the two Supreme Court decisions referred to above specifically recognize that the meaning of "permanent" is governed by "the intent of the parties" or the circumstances of the case.

In Mead v. Ballard, supra, the court said: "Counsel for the plaintiff attach to the word 'permanent,' in this connection, a meaning in-

consistent with the obvious intent of the parties, that the condition was one which might be fully performed within a year."

And in the Texas & Pacific R. Co. Case, supra: "The word 'permanent' does not mean forever, or lasting forever, or existing forever. The language used is to be considered according to its nature and its relation to the subject-matter of the contract, and we think that these things were permanently established by the railway company at Marshall."

Applying these tests to the use of the word in human pathology, we find that "permanent" there means "lasting until death." We speak of permanent blindness as being blindness that will endure for the patient's lifetime. So with permanent lameness, permanent deafness, permanent scars, or any other "permanent" physical infirmity or blemish.

In view of the fact that several federal courts—some of them since the briefs in the instant case were filed—have held that, to recover on a war risk insurance policy of this kind, the veteran must establish, among other facts, disability at the time of bringing his suit, it is unnecessary to labor the point further.

In United States v. McCreary, 61 F.(2d) 804, 808, decided on November 14, 1932, this court used the following language: "The court is not concerned with the present condition of the appellee, except as it relates to total and permanent disability at the date of discharge, *and at all times since that date,* and the disability must have had its origin at or prior to the date of discharge, be total, and reasonably certain to be permanent during lifetime." (Italics our own.)

The rule was thus stated by the Circuit Court of Appeals for the Tenth Circuit, in United States v. Fitzpatrick, 62 F.(2d) 562, 564, decided on January 3 of this year: "Employment may be of such duration and of such a nature that it conclusively refutes any idea that the insured might have been permanently and totally disabled *prior to* and during the employment. [Cases cited.]" (Italics our own.)

The necessity for the veterans' total disability to continue up to the time of the trial and to give evidence of persisting in the future was clearly brought out in United States v. Crume (C. C. A. 5) 54 F.(2d) 556, 558: "Further, this evidence must not merely show that he was at the time of his discharge totally disabled, but that he has continued and will continue to be so, not as the result of successive maladies making their onset from time to time, but as the result of the same malady, which then totally disabling, *has continued* and will continue permanently to be so." (Italics our own.)

It is obvious that the same test should be applied to the veteran's pleadings. If, on the face of the complaint, it is clear that the plaintiff is no longer totally disabled, he cannot be said ever to have been permanently and totally disabled.

As was well said in the case of United States v. Harth (C. C. A. 8) 61 F.(2d) 541, 546, where many decisions involving the interpretation of the term "total and permanent disability" were collated: "Appellee sustained a severe wound while in service on the field of battle. It is no doubt a serious handicap in the pursuit of a substantially gainful occupation. He is entitled to compensation commensurate with the disability he has suffered. If that he now receives is inadequate, the law provides opportunity for review, and for increase, if that is found to be warranted. [Authorities cited.] But we cannot approve recovery upon a contract of insurance, the express and crucial terms of which have obviously not been met."

For the foregoing reasons we find no error in the ruling of the court, sustaining the appellee's demurrer to the appellant's complaint.

Judgment affirmed.