## UNITED STATES v. RODMAN.
### No. 3536.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

W. H. Fisher, U. S. Atty., of Wilmington, N. C. (J. D. DeRamus, Chief Atty., Veterans' Adm., and T. P. Regan, Atty., Veterans' Adm., both of Charlotte, N. C., on the brief), for the United States.

Junius D. Grimes, of Washington, N. C. (W. B. Rodman, Jr., John C. Rodman, Jr., and H. S. Ward, all of Washington, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action instituted by the appellee (hereafter referred to as the plaintiff) to recover on a war risk insurance policy issued to him by the United States during the World War. The policy was converted pursuant to application made for that purpose on June 13, 1927. The policy lapsed on March 30, 1928, for nonpayment of premium; the case was tried in April, 1933, at Washington, N. C. At the conclusion of the plaintiff's evidence motion was made on behalf of the defendant for a directed verdict, which motion was refused, and again, at the conclusion of the evidence introduced on behalf of the defendant, the motion for a directed verdict was renewed and again refused and the case was submitted to the jury, which found the issues in favor of the plaintiff. Upon this verdict of the jury, judgment was entered in favor of the plaintiff, from which action this appeal was brought. The only question presented is whether or not the court erred in refusing to direct a verdict for the defendant.

The plaintiff entered the Army in 1917 and was discharged on April 12, 1919, and had a policy of insurance issued to him while he was in the Army. This policy was afterward converted and was in effect until March 30, 1928. Plaintiff is a lawyer with a good record as a soldier and citizen and enjoyed a successful practice from the time he left the army until some time in the year 1928, when he became ill, suffering an attack of bronchitis, in the early part of that year. He at least partially recovered from this attack and continued the practice of his profession until the latter part of 1928, when he again became ill, and since that time has spent a large portion of his time in hospitals and, while endeavoring to continue his practice, and doing so to some small degree, he has not been able to do much work. During the year 1927 he had trouble with his eyes, but after an operation upon his lids this condition was apparently relieved and did not recur. In May, 1929, plaintiff developed a carcinoma, or cancer, of the mouth, which, after an operation and treatment, became arrested and was apparently arrested at the time of the trial.

On the 31st day of May, 1928, two months after his policy had lapsed, plaintiff made application for reinstatement of his insurance, in which application he made the following answers:

"2. Are you now in as good health as you were at the due date of the premium in default? Yes.

"3. Are you now permanently and totally disabled? (Answer 'Yes' or 'No') No."

On April 14, 1928, he wrote the following letter:

"Wiley C. Rodman
Attorney at Law
Washington, N. C.

"April 14th, 1928

"Mr. J. S. Pittman, Regional Manager, United States Veterans' Bureau, Charlotte, North Carolina.

"Dear Sir: I received your letter with enclosure dated February 24th, and also yours of March 30th, and I thank you for your interest therein. Candidly speaking, I do not feel that I could claim any disability at the present time, and such disability as I might wish to provide for would be prospective, in that at times I feel concerned about my eyes. Up to now they have been protected by the use of glasses and unless they should get a great deal worse I would not care to file, I am confronted, however, by the proposition that as the years go by I would have greater difficulty in showing any service connection.

"I shall consider it a while longer before taking any action. With best wishes, believe me,

"Yours sincerely,
"[Signed] Wiley C. Rodman."

The record discloses that the plaintiff wrote other letters to the Veterans' Bureau, and to other parties, which all tend to show that the plaintiff himself did not consider that he was permanently and totally disabled at the time the policy lapsed.

"The burden of proof rests upon the plaintiff in an action of this character to establish that he became totally and permanently disabled before the policy lapsed." United States v. Diehl (C. C. A.) 62 F.(2d) 343, 345.

A study of the record in this case discloses the fact that there is an entire absence of any direct proof that the plaintiff was totally and permanently disabled on March 30, 1928, when the policy lapsed. There was evidence of trouble with his eyes, which trouble was apparently cured at the time of the trial, and there was also evidence that, prior to the lapse of the policy, plaintiff suffered an attack of bronchitis, but we have held that such an attack, even when coupled with other physical trouble, is not sufficient to establish total and permanent disability. United States v. Jones (C. C. A.) 62 F.(2d) 347.

It is also true that in the year 1929 the plaintiff did develop carcinoma, or cancer, of the mouth, but there is no evidence that this existed at the time of the lapse of the policy other than the statement of the physician that the trouble might have existed for more than a year. Such a statement is a mere surmise and not sufficient upon which to base a finding as to total and permanent disability existing more than a year prior to the examination by the physician.

That the plaintiff himself did not feel that he was totally and permanently disabled at the time of the lapse of the policy is clearly shown by his own statements, made at the time he applied for reinstatement of his insurance and in his letters. One of the ability and education of the plaintiff must certainly have made these statements with full knowledge of their import and meaning, and they strongly tend to disprove total and permanent disability at the time of the lapse of the policy.

That the plaintiff at the time of the trial was totally and permanently disabled, and had been so rated by the Veterans' Bureau, is established by the evidence; but there is an utter lack of evidence proving that this condition existed at the time the policy lapsed, and, no matter how much the present condition of the plaintiff may appeal to the sympathy of every one conversant with the circumstances, for a court to find from the evidence here presented that prior to March 30, 1928, plaintiff was totally and permanently disabled would be a "mere guess, unsupported by any substantial evidence." Blair v. United States (C. C. A.) 47 F.(2d) 109, 111; Nicolay v. United States (C. C. A.) 51 F.(2d) 170.

It may be that upon a new trial the insured may be able to show that the diseases from which he suffered were symptomatic of some deep-seated ailment, which at the time of the lapse of the policy had reached such stage as to constitute total and permanent disability; but on the record before us there is no evidence upon which such conclusion would be justified.

It is contended on behalf of the government that the work record of the plaintiff in the practice of his profession negatived the possibility that the plaintiff was totally and permanently disabled, but in view of our conclusion, as above set out, as to the failure of proof, it is not necessary to consider this point. The judge below should have directed a verdict for the defendant, and the judgment is accordingly reversed.